**Dated: December 10, 2009**
**The following is ORDERED:**



_____
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

NOT FOR PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

In Re:

**CHARLES ALLEN BOUDINOT**  Case No. 09-80706
**BILLIE DAWN BOUDINOT**,  Chapter 13

        Debtors.

### ORDER GRANTING OBJECTION TO CLAIM

This matter came on for evidentiary hearing before the Court on November 12, 2009, on the Debtors' Objection to Claim #4 of Ralph and Kathleen Stumpf (Docket Entry 18) with Response filed by Ralph and Kathleen Stumpf (Docket Entry 21), and Debtors' Response with Arguments and Authorities (Docket Entry 30).  Appearing before the Court were Melinda Dunlap for the Debtors, Michael McCoy for Ralph and Kathleen Stumpf, and William Mark Bonney, Standing Chapter 13 Trustee.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  For reasons set forth below, the Debtors' Objection to Claim is granted.

EOD 12/10/09 by sev

Debtors filed this case on May 6, 2009. Prior to filing bankruptcy, Debtors entered into a Contract for Deed with Ralph and Kathleen Stumpf on October 6, 2006, for the purchase of real estate and a mobile home in Okmulgee County. The purchase price was $86,483.00, with eight percent interest, "payable in monthly installments of Seven Hundred Ninety Seven Dollars and Four Cents ($797.04) beginning on the 6th day of October, 2006, and continuing on the 1st day of each and every month thereafter, until October 1st, 2031 or otherwise paid in full." Regarding insurance coverage, page two of the Contract for Deed included the following provision: "Risk of loss by negligence, fire or other casualty is on the Buyer. Property Insurance is covered in the Monthly Payment outlined in this contract."

The Buyers were required to pay "all taxes, assessments, or impositions that may be legally levied or imposed upon said land apportioned as of the date of this Contract. Seller will deliver tax statements to Buyer upon receipt and Buyer will pay said taxes." The Contract was signed by the Sellers, Ralph and Kathleen Stumpf, and by the Buyers, Charles and Billie Boudinot. Mr. Boudinot paid the mortgage tax and recorded the Contract with the Okmulgee County Clerk on July 8, 2008, Book 1955, page 816.

Mr. Boudinot testified that all of the negotiations regarding the Contract for Deed were done through Mrs. Stumpf. He stated that he purchased a form for a contract for deed online and provided it to the Stumpfs. He also testified that they agreed with Mrs. Stumpf regarding the amount of the monthly payment, that the amount included the mortgage payment and insurance, that the Sellers would pay the insurance, and that Buyers would pay taxes and assessments. He stated that he had no idea that the monthly payment amount might change. Mrs. Stumpf did not testify, but Mr. Stumpf testified that

2

Case 09-80706   Doc 81   Filed 12/10/09   Entered 12/10/09 17:06:15   Desc Main
Document    Page 2 of 8

he received the form contract by email and that the parties worked on the terms for about three months.  He stated that the Boudinots were taking over he and his wife's existing mortgage payments, although he never provided copies of that note and mortgage to the Boudinots.  He acknowledged that the language of the Contract for Deed stated that the payment was a fixed amount and that it provided that the insurance premium was included in the amount of the payment.  However, he testified that it was never his intent nor their agreement that the payment would remain fixed.  He explained  that he did not specifically include language in the Contract for Deed stating that the amount of the monthly payment was subject to change if the insurance premium amount changed because it was common knowledge that payments included escrowed amounts and that escrow is subject to change.  He also stated that the parties were negotiating a method for the Boudinots to pay him the equity he had in the property, but that those negotiations were not concluded by the time the Contract for Deed was executed.

On December 7, 2006, an Installment Promissory Note for $42,000 was prepared, representing $40,000 for "Lenders Equity" in the property sold in the Contract for Deed, and $2000 for a tractor.  The Note was never executed. On January 9, 2007,  the Debtors and Ralph Stumpf executed an Installment Promissory Note for $42,000, representing $40,000 for "Lenders Equity" in the property sold in the Contract for Deed, and $2000 for a Massey Ferguson tractor.  This Note provided that the Debtors would pay Ralph Stumpf $500 a month until December 2013, with payments being applied first to the tractor, and then to the Lenders Equity.  Mr. Stumpf testified that the Promissory Note was a continuation of the Contract for Deed transaction, but stated that there was no urgency in completing the deal.  Mr. Boudinot testified that the parties negotiated the Promissory Note

3

after the Contract for Deed was completed.

Sometime after the Contract for Deed was executed, the Debtors began paying the Stumpfs an additional $100 per month, per the Stumpfs' request. Mr. Boudinot stated that he did not know exactly what the extra amount was for, either insurance or taxes. They later learned that the money was to pay the taxes, but when they discovered that the amount was not used for the taxes, they decided to stop paying the extra amount. He stated that they paid an extra $100 each month for fifteen months. Mr. Boudinot admitted that he and his wife were required to pay taxes on the property. He stated that at bankruptcy, they were three payments behind on the Contract for Deed and owed two years' worth of taxes. Their Chapter 13 Plan proposed to pay the Contract for Deed monthly payment of $797.04, plus the three months of arrearages, and the taxes due.

Mr. Stumpf testified that the insurance premium on the property increased and that he asked the Boudinots to pay him that increase. The Stumpfs obtained the insurance, paid the premiums, and were the loss payees. The Boudinots paid an extra $100 a month for awhile but stopped doing so in 2009. In 2008, the mobile home on the property suffered damage during a storm, and the Boudinots had difficulty getting the Stumpfs' insurance to cover the damage. The parties' testimony differed regarding the events surrounding the damage and insurance claim, with Mr. Boudinot stating that Mr. Stumpf delayed giving them needed information to file a claim through the Stumpfs' insurance, and Mr. Stumpf stating that he provided the name of the agent, but that the damage was not significant enough to warrant payment. In March of 2009, Mr. Stumpf asked the Boudinots to obtain their own insurance on the property because his insurance policy was going to lapse in April.

4

After the Boudinots filed bankruptcy, Ralph and Kathleen Stumpf filed a proof of claim on June 26, 2009, for $118,893.78, listing the entire amount as secured. Attached to the Proof of Claim was an itemization, listing the principal balance on the Contract for Deed of $85,668.16, interest of $2,929.68, the principal balance on the Promissory Note of $29,500, late charges of $103.14, taxes of $542.80, and post-petition bankruptcy fees and costs of $150.00. The itemization also listed arrearages in the amount of $6,002.32, consisting of six monthly payments of $867.73, late charges of $103.14, taxes of $542.80, and post-petition bankruptcy fees and costs of $150.00. The Boudinots filed an objection to this Proof of Claim, stating that they did not dispute the principal balance on the Contract for Deed of $85,668.16, with monthly payments of $797.04 to be paid through the Chapter 13 Plan. They stated that the Promissory Note was an unsecured debt.

A proof of claim that is executed and filed in accordance with bankruptcy rules and procedures constitutes "prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). As the objecting party, Debtors have the burden of presenting evidence that is "of probative force equal to that of the allegations contained in the proof of claim." *In re Broadband Wireless Intern. Corp.* 295 B.R. 140, 145 (10th Cir. BAP 2003) (citations omitted). Debtors rebutted the validity of the Stumpfs' Proof of Claim by presenting a copy of the Contract for Deed and Promissory Notes, and have raised the legal issues that the terms of a written contract may not be altered if it is clear and unambiguous, and that the Promissory Note was not a secured debt. This evidence is sufficient to reach the threshold for probative force. *See In re Lenz*, 110 B.R. 523, 525 (D. Colo. 1990). Thus, "the ultimate burden of persuasion as to the validity and amount of the claim" shifts to the Stumpfs. *Broadband Wireless*, 295 B.R. at 145, citing *In re Harrison,*

987 F.2d 677, 680 (10th Cir. 1993).

In assessing the validity of the Stumpfs' claim, the first issue before the Court is whether the monthly payment amount set forth in the Contract for Deed is a fixed amount for the entire term of the agreement, or whether it may be changed to include the increased cost of property insurance premiums. Where an agreement has been reduced to writing, the intention of the parties, as well as the interpretation of the agreement's terms, are to be ascertained from the writing alone. Okla. Stat. tit. 15, § 155. "Pre-contract negotiations and oral discussions are merged into and superseded by the terms of the written agreement." *First National Bank in Durant v. Honey Creek Entertainment Corp.*, 2002 OK 11, ¶ 10, 54 P.3d 100, 103; *see also* Okla. Stat. tit. 15, § 137. The "language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Okla. Stat. tit. 15, § 154. Where the language is clear and unambiguous, the court is to interpret it as a matter of law. *Corbett v. Combined Communications, Corp.*, 1982 OK 135, ¶ 5, 654 P.2d 616, 617.

The Stumpfs have not persuaded the Court that the language of the Contract for Deed is ambiguous or absurd. Under Oklahoma law, contracts for deed are to be treated like mortgages. Okla. Stat. tit. 46, § 1. The Court finds that the language of the Contract for Deed is clear and unambiguous, therefore there is no need to resort to extrinsic evidence to glean its meaning. The language clearly states: "Property Insurance is covered in the Monthly Payment outlined in this contract." The monthly payment is listed as $797.04. There is no provision for this amount to change. The Contract also states that: "This Contract is the entire agreement between the parties with respect to the transaction contemplated herein. It replaces and supersedes any and all oral agreements

6

between the parties, as well as any prior writings."

Although this result may seem harsh since Mr. Stumpf reported that the insurance premium he was paying has increased, the parties could have easily included a provision for an increase in the amount of the monthly payment should insurance costs change, if that was their agreement. No such provision is included in this contract. The Court is constrained by the language of the agreement. A party to an unambiguous written contract is estopped to insist upon an unnatural construction in order to support a construction more favorable to itself." *Golden v. Golden*, 1932 OK 76, 8 P.2d 42 . The monthly payment on the Contract for Deed is $797.04, including interest and insurance. Taxes are not included in this amount per the terms of the Contract, therefore the Boudinots are responsible for paying the taxes owed since the time they acquired the property.

Any changes to the terms of the Contract were required to be in writing and signed by both parties. The increase in payments by the Boudinots was said to be voluntary and based solely on oral requests for more money from the Stumpfs. The temporary increase in payments by the Boudinots was not effective to modify the written agreement. As stated in the Contract for Deed:

> Neither this Contract nor any provision hereof may be waived, modified, amended, discharged, or terminated except by an instrument in writing signed by the party against which the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

The second issue before the Court is whether the Stumpfs' claim for the amount owed on the Promissory Note is a secured or unsecured debt. The Court finds that the Promissory Note is an unsecured debt. The Stumpfs have provided no evidence that the debt is secured. There is no language in the Note providing that it is secured by any

7

property. Although it references the Contract for Deed, there is nothing to suggest that the parties intended there to be a second mortgage on the real estate or a lien on the tractor as security for the payment of the Note. Also, the Promissory Note is with Mr. Stumpf only, and was executed at a different time than the Contract for Deed. No mortgage or lien was filed of record indicating that this debt was secured. Therefore, this debt shall be treated as unsecured in the Plan.

IT IS THEREFORE ORDERED that the Debtors' Objection to Claim #4 of Ralph and Kathleen Stumpf (Docket Entry 18) is **granted**.

IT IS FURTHER ORDERED pursuant to the terms of the Contract for Deed that the Debtors' monthly payment to the Stumpfs is $797.04, that this payment includes the cost of insurance, that no additional amount shall be included to cover the cost of insurance, and that the Debtors are responsible for payment of taxes on the property.

IT IS FURTHER ORDERED that the portion of the Stumpfs' Proof of Claim for amounts owed on the Installment Promissory Note is an unsecured debt.

###

8